```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF KENTUCKY
                       CENTRAL DIVISION at LEXINGTON
```

UNITED STATES OF AMERICA,         )
                                  )
    Plaintiff,                    ) Criminal Action No. 5:07-37-JMH
                                  )
v.                                )
                                  )  **MEMORANDUM OPINION AND ORDER**
                                  )
JOSE JESUS AGUIRRE-ARREGUIN,      )
                                  )
    Defendant.                    )

                **   **   **   **   **

Before the Court is Defendant Jose Jesus Aguirre-Arreguin's ("Aguirre") motion to suppress [Record No. 17]. The parties have filed their briefs as directed at the April 30, 2007, suppression hearing, and this matter is ripe for review.

Defendant has moved to suppress all evidence seized during the search of the upstairs portion of 928 Liberty Road. On January 17, 2007, Fayette District Judge T. Bruce Bell authorized search warrants for the residences at 928 Liberty Road and 932 Liberty Road in Lexington, Kentucky, based on two affidavits sworn to by Detective Jerrod Curtsinger. According to the affidavits, Curtsinger conducted an independent investigation after he obtained the following information from a cooperating informant ("CI"):

    1.   Robert Martin, or alias Robert Flinchum, and Jesus Aguirre resided at 928 and 932 Liberty Road.
    2.   Martin kept guns and marijuana inside the house and in the garage behind the house.
    3.   Aguirre supplied Martin cocaine and marijuana to sell.
    4.   Aguirre's father had previously been arrested for

>    Trafficking in a Controlled Substance but fled the country.
> 5. Martin owned both the house at 928 Liberty Road and 932 Liberty Road.
> 6. Martin and Aguirre concealed marijuana, cocaine, and scales around the two properties at 928 and 932 Liberty Road.

The CI also provided Martin's cell phone number. Detective Curtsinger's independent investigation uncovered the following additional facts:

> 1. The Property Valuation website for Fayette County indicated that 928 and 932 Liberty Road are owned by Martin.
> 2. On March 14, 2005, Martin listed 928 Liberty Road as his address in a police report for a stolen motorcycle.
> 3. In October 2006, a police summons for Martin listed his address as 932 Liberty Road.
> 4. During surveillance, Detective Curtsinger observed a black Chevrolet Avalanche, registered to Aguirre, parked in front of both residences on numerous occasions.
> 5. Detective Curtsinger also observed a blue GMC pickup, registered to Aguirre and Martin, parked at 928 Liberty Road.
> 6. Martin's Kentucky drivers license listed his address as 932 Liberty Road.
> 7. According to police records, Martin was found to be in possession of marijuana in October 2002, was arrested for Assault 4th in December 2003, and was arrested for two counts of carrying a concealed deadly weapon in April 1992.
> 8. During an October 3, 2006, trash pull, Detective Curtsinger discovered marijuana stems and seeds.
> 9. During a January 16, 2007, trash pull, Detective Curtsinger discovered mail addressed to Martin, including a phone bill that listed the same cell phone number as that provided by the informant; two plastic sandwich bags with corners missing as well as the torn corner of a sandwich bag, which, based on Curtsinger's training and experience, are consistent with drug distribution; and marijuana stems.

2

10. Curtsinger never observed more than one trash receptacle outside 928 and 932 Liberty Road and believed that the occupants of both residences used the same receptacle.
11. On May 10, 2006, a qualified confidential informant purchased powder cocaine from Martin at 932 Liberty Road. The qualified confidential informant also advised detectives that he/she had observed guns on Martin and within the residence, that Martin kept guns and illegal narcotics in the garage behind 932 Liberty Road, and that Martin and Aguirre used both 928 and 932 Liberty Road to house and traffic in illegal narcotics.
12. On January 17, 2007, Detective Curtsinger observed Martin picking up a mail delivery and throwing some of the mail in the trash.
13. On January 17, 2007, Officer Cobb made contact with Martin at 928 Liberty Road, where Cobb smelled a strong odor of burnt marijuana. Martin told Officer Cobb that he owned both 928 and 932 Liberty Road, that he lived at 928 Liberty Road, and that 932 Liberty Road was vacant. He also stated that he went back and forth between the two residences.

The Court held a suppression hearing on April 30, 2007. Based on Detective Curtsinger's affidavit and the testimony elicited at the suppression hearing, the initial testimony of the cooperating informant, Aguirre's uncorroborated testimony that the utility bills were in his name, and the fact that Aguirre often parked at 928 Liberty Road were the only indicia of a multi-family dwelling at the time the warrant was issued. When the officers searched the inside of 928 Liberty Road, the following additional indicia were available: the door to Aguirre's room was locked, the upstairs and downstairs portions were painted differently, and a drawn curtain separated the upstairs and downstairs portions.

All other evidence indicated that Martin was the sole owner of and resident at 928 Liberty Road. Lexington PVA records listed

3

Martin as the sole owner of the property and described the residence type as single-family. Although the initial cooperating informant testified that Aguirre resided at 928 Liberty Road, Detective Curtsinger's investigation only uncovered evidence that Martin lived there. During his trash pulls, Detective Curtsinger did not discover one piece of mail addressed to Aguirre, and the fact that Aguirre often parked at 928 Liberty Road did not necessarily mean he lived there. Although a number of other houses on Liberty Road had two front doors, 928 and 932 Liberty Road both only had one front door. There were no separate house numbers and no separate mailbox. Aguirre did not pay rent but instead reimbursed Martin for property taxes and paid the electric, water, and utility bills.

"[A] general search warrant for an entire building, . . . occupied by different families or different tenants, is ordinarily null and void." *United States v. Votteller*, 544 F.2d 1355, 1363 (6th Cir. 1976) (quoting *Tynan v. United States*, 297 F. 177, 179 (9th Cir. 1924)). In such a case, separate living units are treated as if they were separate houses, and probable cause must be shown for searching each separate unit. *Id.* (citing *United States v. Hinton*, 219 F.2d 324, 326 (7th Cir. 1955)). Otherwise, the officers are obligated to exclude any apartment for which they have not shown probable cause from the scope of the warrant. *See Maryland v. Garrison*, 480 U.S. 79, 85

4

(1987).

At the outset, however, the Court must determine whether the investigating officer knew or should have known that 928 Liberty Road contained separate dwelling units. *See id.* The Court must judge the constitutionality of Detective Curtsinger's conduct in light of the information available at the time he obtained the warrant. *Id.* "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing Magistrate." *Id.* For purposes of determining whether Detective Curtsinger knew or should have known that 928 Liberty Road was not a one-family home, the Court may consider the presence or absence of external indicia, such as dual mail boxes, doorbells, utility meters, and assigned street addresses of independent residences. *Votteller*, 544 F.2d at 1364.

The Court determined at the suppression hearing that Detective Curtsinger's affidavit established probable cause to search the entire residence at 928 Liberty Road. Even though the original informant stated that Aguirre lived at 928 Liberty Road, the vast majority of evidence uncovered during Detective Curtsinger's thorough investigation indicated that Martin was the sole owner and resident of the property. The property contained no external indicia of a multi-family dwelling, and the alleged rental agreement between Aguirre and Martin appears to have been conducted

5

entirely under the table.

If a search warrant is valid but turns out to be overbroad, the officers executing the warrant are required to discontinue the search of separate units or apartments as soon as the officers discover the existence of the separate units. *Garrison*, 480 U.S. at 87.  The conduct and limits of the search are "based on the information available as the search proceeded." *Id.*  The following information and evidence was revealed as the search proceeded: (1) a drawn curtain separating the upstairs and downstairs, (2) the fact that the upstairs and downstairs were painted differently, (3) a locked door, and (4) Aguirre and his girlfriend sleeping in the upstairs bed.  The drawn curtain and the fact that the two floors were painted differently are decorating choices and, standing alone, do not indicate a separate living area.  The fact that Aguirre was sleeping upstairs behind a locked door also does not necessarily indicate that he lived at the residence.  In the absence of more concrete evidence of a separate apartment – e.g., a doorbell, a separate number on the defendant's door, or a mailbox – the Court is not prepared to say the officers executing the search warrant should have known the upstairs unit was in fact a separate living space.  Therefore, the search of what turned out to be Aguirre's residence was valid.

The motion to suppress also fails because Detective Curtsinger's affidavit established probable cause to search the

6

entire residence at 928 Liberty Road regardless of whether Curtsinger knew or should have known that Aguirre lived there. Since the sufficiently-corroborated information set forth in the affidavit indicated that Martin and Aguirre used the entire property at 928 Liberty Road for the purposes of drug distribution, there was probable cause to search the entire building. *See Votteller*, 544 F.2d at 1363 ("'A single warrant may cover several different places or residences in a single building. But probable cause must be shown for searching each residence . . . .'") (quoting *Hinton*, 219 F.2d at 325-26).

Finally, even if the warrant was invalid, the good faith exception to the exclusionary rule applies because the investigating officers "acted in objectively reasonable reliance on a warrant issued by a detached and neutral magistrate." *Massachusetts v. Sheppard*, 468 U.S. 981, 987-88 (1984). As discussed more fully above, the officers discovered nothing during the search that reasonably should have led them to believe 928 Liberty Road was not a single-family dwelling.

For the foregoing reasons, **IT IS ORDERED** that Defendant Jose Jesus Aguirre-Arreguin's motion to suppress [Record No. 17] be, and the same hereby is, **DENIED.**

```
This the 23rd day of May, 2007.
```



Signed By:

*Joseph M. Hood*

United States District Judge